# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| NATIONAL FEDERATION OF THE BLIND, on behalf of its members and itself; and ALAN SCHLANK, BILLIE RUTH SCHLANK, JOYCE PRATT, MARK ADREON and MICHAEL MAY, on behalf of themselves and all others similarly situated,<br><br>            Plaintiffs,<br><br>v.<br><br>CLARK COUNTY, NEVADA; CLARK COUNTY BOARD OF COMMISSIONERS; and CLARK COUNTY DEPARTMENT OF AVIATION d/b/a MCCARRAN INTERNATIONAL AIRPORT,<br><br>            Defendants. | Case No. 2:11-cv-0474-LDG-CWH<br><br>**ORDER** |

The plaintiffs, several blind individuals as well as the National Federation of the Blind, filed their original complaint in March 2011 before filing an amended complaint in May 2011. They allege that Clark County, Nevada, violated the Americans with Disabilities Act ("ADA") and § 504 of the Rehabilitation Act, by owning and operating airport ticketing kiosks which were inaccessible to the blind. The defendants move to dismiss, arguing that they followed regulations from the U.S. Department of Transportation ("DOT") that outline

what types of accommodations satisfy federal nondiscrimination statutes. The defendants also filed, as supplemental authority, new regulations from the DOT that grant airport owners and operators until December 2016 to make kiosks accessible to the disabled. The plaintiffs seek both monetary damages and injunctive relief. The Court will deny the motion to dismiss as to monetary damages, but will grant the motion to dismiss as to injunctive relief.

Motion to Dismiss

The defendants' motion to dismiss, brought pursuant to Fed. R. Civ. P. 12(b)(6), challenges whether the plaintiffs' complaint states "a claim upon which relief can be granted." In ruling upon these motions, the court is governed by the relaxed requirement of Rule 8(a)(2) that the complaint need contain only "a short and plain statement of the claim showing that the pleader is entitled to relief." As summarized by the Supreme Court, a plaintiff must allege sufficient factual matter, accepted as true, "to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Nevertheless, while a complaint "does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555 (citations omitted). In deciding whether the factual allegations state a claim, the court accepts those allegations as true, as "Rule 12(b)(6) does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations." *Neitzke v. Williams*, 490 U.S. 319, 327 (1989). Further, the court "construe[s] the pleadings in the light most favorable to the nonmoving party." *Outdoor Media Group, Inc. v. City of Beaumont*, 506 F.3d 895, 900 (9th Cir. 2007).

However, bare, conclusory allegations, including legal allegations couched as factual, are not entitled to be assumed to be true. *Twombly*, 550 U.S. at 555. "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is

inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679. Thus, this court considers the conclusory statements in a complaint pursuant to their factual context.

To be plausible on its face, a claim must be more than merely possible or conceivable. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'show[n]'–'that the pleader is entitled to relief.'" *Id.* (citing Fed. R. Civ. P. 8(a)(2)). Rather, the factual allegations must push the claim "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. Thus, allegations that are consistent with a claim, but that are more likely explained by lawful behavior, do not plausibly establish a claim. *Id.* at 567.

Background

The plaintiffs filed the instant complaint in May 2011, alleging that Clark County owned and operated at least 180 common use self-service ("CUSS") kiosks that were inaccessible to blind individuals, in violation of the ADA (42 U.S.C. § 12101) and § 504 of the Rehabilitation Act (29 U.S.C. § 794). The CUSS kiosks are installed at McCarran International Airport, and permit passengers to check in for flights, print boarding passes, select seats, upgrade their tickets, check baggage, and otherwise prepare for their flights. The plaintiffs seek both monetary damages and injunctive relief.

According to the Ninth Circuit, "there is no significant difference in the analysis of rights and obligations" for claims brought under the ADA and claims brought under § 504 of the Rehabilitation Act. *Vinson v. Thomas*, 288 F.3d 1145, 1152 n.7 (9th Cir. 2002). Therefore, the Court will analyze the claims together. In order to plead a disability discrimination claim, the Ninth Circuit requires a plaintiff to allege that:

> (1) the plaintiff is an individual with a disability; (2) the plaintiff is otherwise qualified to participate in or receive the benefit of some public entity's services, programs or activities; (3) the plaintiff was either excluded from

> participation in or denied the benefits of the public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (4) such exclusion, denial of benefits, or discrimination was by reason of the plaintiff's disability.

*Thompson v. Davis,* 295 F.3d 890, 895 (9th Cir. 2002).

The defendants moved to dismiss this complaint in April 2012. They argue that the plaintiffs have failed to sufficiently allege the third element because accommodations already in place provide blind individuals with the same benefits available to those who use the CUSS kiosks. The defendants cite a regulation promulgated by the DOT, which states:

> As a carrier, if your automated kiosks in airport terminals cannot readily be used by a passenger with a disability for such functions as ticketing and obtaining boarding passes that the kiosks make available to other passengers, you must provide equivalent service to the passenger (e.g., by assistance from your personnel in using the kiosk or allowing the passenger to come to the front of the line at the check-in counter).

14 C.F.R. § 382.57. *See also* 14 C.F.R. § 382.91.

The defendants argue that because airlines at McCarran International Airport comply with this regulation, the plaintiffs' suit for injunctive relief and monetary damages should be dismissed. The plaintiffs dispute the defendants' arguments on two grounds. First, the plaintiffs argue that the regulation cited by the defendants comes from a Supplemental Notice of Proposed Rulemaking ("SNPRM"), and is essentially a placeholder regulation, until final regulation can be crafted and approved by the DOT. Therefore, the plaintiffs argue the regulation has no force, and is inapplicable to the present suit. Second, they argue that the DOT has promulgated this regulation under authority from the Air Carrier Access Act ("ACAA"), which applies to air carriers that own or lease airport terminals, rather than to public entities which own and operate the airports. The plaintiffs therefore argue that the regulation is irrelevant to determining whether the defendants discriminated on the basis of disability in violation of the ADA.

4

In January 2014, this Court granted the defendants' motion for leave to file notice of supplemental authority. The defendants thereby incorporated into the record the DOT's finalized kiosk regulations, which superseded the regulations contained in the SNPRM. The new rule states:

> Airport operators that jointly own, lease, or control automated airport kiosks with carriers at U.S. airports must ensure that all shared-use automated kiosks installed on or after December 12, 2016 meet the design specifications set forth in paragraph (k) of this section until at least 25 percent of kiosks provided in each location at the airport . . . meet this specification.

49 C.F.R. § 27.71(j)(1).

The defendants argue that this rule absolves them of liability through December 2016, and that the plaintiffs' motion should therefore be dismissed (#77).

Analysis

At its heart, the instant suit embodies the struggle between the variety of public and private enterprises and the variety of statutes and regulations that overlap in a single industry. As the DOT has noted, "U.S. airports are governed, for disability nondiscrimination, by several Federal laws and rules, all of which coexist on the same airport real estate." *Nondiscrimination on the Basis of Disability in Air Travel*, 73 Fed. Reg. 27614, 27620 (May 13, 2008).

Going forward, the standard is clear. DOT regulations regarding CUSS kiosks have been expanded to encompass both air carriers and airport operators (49 C.F.R. § 27.71). This Court, at this time, will not alter or supplement this mandate through unilateral, injunctive action. Therefore, the Court will grant the defendants' motion to dismiss regarding the plaintiffs' claims for injunctive relief.

Similarly, the Court will grant the defendants' motion to dismiss insofar as the plaintiffs seek any monetary damages beyond November 2013, when the current regulations were promulgated. As the Ninth Circuit has noted, "federal regulations do have the force of law and may define [the] legal obligations" of parties sued for violating an

individual's rights. *Howard v. City of Burlingame*, 937 F.2d 1376, 1380 (9th Cir. 1991). Therefore, because 49 C.F.R. § 27.71 is the governing regulation regarding the defendants' current obligations, and because the plaintiffs have not alleged that the defendants are in violation of the regulation (nor, indeed, would it even be possible to allege a violation prior to December 2016), any monetary damages must be limited to the period prior to November 2013.[1]

Looking backward, however, is more difficult. The defendants argue that, even if the earlier guidelines applied only to air carriers, it nevertheless provides persuasive evidence that the defendants were in compliance with federal disability discrimination law. In essence, the defendants argue that if the ACAA, and the regulations contained in 14 C.F.R. § 382.57, govern what actions air carriers must take to comply with the ADA, then "it would make no sense" to hold airports, and the public entities that operate them, to a higher requirement.

This argument, although potentially persuasive, fails to demonstrate that the plaintiffs have insufficiently alleged discrimination. In November 2013, the DOT determined that airport owners and air carriers should be held to an identical standard regarding kiosk operations. Prior to that, there were no clear standards for airport owners. As the plaintiffs note, when there are no "specific standards for a particular type of facility . . . the facility must still be designed and operated to meet other title [sic] II requirements, including program accessibility." Dep't of Justice, Title II Technical Assistance Manual §

---

[1] The plaintiffs have advised the Court that they are currently challenging the DOT's new regulations in the U.S. District Court for the District of Columbia (*Nat'l Fed'n of the Blind v. U.S. Dep't of Transp.,* Case No. 1:14-cv-00085-KBJ), and have urged the Court to "forbear making a ruling . . . premised upon the DOT's Final rule . . . unless and until the validity of the DOT's rulemaking is conclusively determined." Yet as the plaintiffs themselves argued regarding the DOT's earlier regulations, "[t]his Court is not required to predict future agency rulemakings, nor is it bound to wait for future regulations to enforce extant statutory rights." So, too, will the Court refuse to wait for possible future changes to the law when ruling on a currently valid, binding federal regulation.

6.2100 (1994 Supp.). In the "airport real estate" operated by the defendants, the Court must consider the broad requirements of the ADA and § 504 of the Rehabilitation Act just as it must consider the persuasive, but non-determinative, regulations of the ACAA. It is possible that the defendants' accommodations were sufficient, reading 14 C.F.R. § 382.57 as a persuasive guide to the defendants' obligations. But lacking specific, binding regulations to define the contours of the defendants' ADA obligations, the Court cannot say that the plaintiffs have failed to plausibly allege discrimination on the basis of disability. Therefore, the Court will deny the defendants' motion to dismiss as to the plaintiffs' two claims, insofar as they seek monetary damages for alleged discrimination occurring prior to November 2013.

Accordingly,

THE COURT **ORDERS** that the Defendants' Motion to Dismiss (#47) is GRANTED as to all claims for injunctive relief, and as to any claims for monetary damages due to alleged discrimination after November 2013.

THE COURT **FURTHER ORDERS** that the Defendants' Motion to Dismiss (#47) is DENIED as to the Plaintiffs' claims for monetary damages due to alleged discrimination prior to November 2013.

DATED this ___ day of August, 2014.

Lloyd D. George
United States District Judge

7